IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RONDALD LEE REED,            )
                             )
    Plaintiff,               )
                             )
v.                           )   CIVIL ACTION 09-0200-WS-N
                             )
BLAINE BARNETT, et al.,      )
                             )
    Defendants.              )

## ORDER

This matter is before the Court on the motion for summary judgment filed by the sole remaining defendant, Blaine Barnett. (Doc. 68). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 69-70, 74-75, 79), and the motion is ripe for resolution. After carefully considering the foregoing, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

The amended complaint alleges that on March 14, 2008, Barnett, a law enforcement officer, employed unconstitutionally excessive force, and committed an assault and battery, in the course of arresting the plaintiff. Barnett invokes qualified immunity as to the federal claim and peace officer immunity as to the state claim.

## DISCUSSION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1367(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

[1]

56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). "If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

The parties have submitted a number of exhibits, some of which they have not referenced in their briefs or have referenced only in part.[1] There is no burden on the Court to identify unreferenced evidence supporting a party's position.[2] Accordingly, the

---

[1] By local rule, "[i]f discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed with the motion or response." Local Rule 5.5(c). The same rule applies to depositions. *Id*. Rule 5.5(b). The parties were cautioned in advance to comply with these rules. (Doc. 16 at 6).

[2] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *accord Jones v. Sheehan,*
(Continued)

Court limits its review to the exhibits, and the specific portions of the exhibits, which the parties have expressly cited.

Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court limits its review to those legal arguments the parties have expressly advanced.

## I. Fourth Amendment.

The right to arrest carries with it the right to use physical coercion or its threat in order to effect the arrest, and an arrest typically "involves some force and injury." *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008) (internal quotes omitted). Nevertheless, "[i]t is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert International, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). The burden then shifts to the plaintiff to show that the defendant's conduct "violated a clearly established statutory or

---

*Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984); *Karlozian v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001); *see also* Local Rule 7.2.

constitutional right." *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003). The inquiry may be broken down into two parts: (1) whether the facts alleged, if true, would establish a violation of the plaintiff's rights; and (2) whether these rights were clearly established at the time of the alleged deprivation. *Id.*

### A. Discretionary authority.

"[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. ... If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law." *Harbert International*, 157 F.3d at 1281 (emphasis added). The reason is that an official acting outside the scope of his discretionary authority "ceases to act as a government official and instead acts on his own behalf," so that "the policies underlying the doctrine of qualified immunity no longer support its application." *Id*.

For purposes of federal qualified immunity analysis, a defendant acts within his discretionary authority when "his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (internal quotes omitted). That is, "[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). "The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," but "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert International*, 157 F.3d at 1282 (internal quotes omitted). For example, the issue is not whether a marshal has the authority to deliver a prisoner into unconstitutional conditions but whether he has the authority to transport and deliver prisoners. *Id.* (describing *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).

[4]

"Because making an arrest is within the official responsibilities of a sheriff's deputy, [the defendant] was performing a discretionary function when he arrested [the plaintiff]," allegedly using excessive force in the process. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004); *accord Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The plaintiff does not dispute that Barnett was acting within his discretionary authority. Accordingly, Barnett has met his initial burden. *See McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) (where the plaintiff did not dispute that the deputy was acting within his discretionary authority at the time of arrest, the burden shifted to the plaintiff to overcome the qualified immunity defense).

### B. Constitutional Violation.

When, as here, the plaintiff does not question the existence of probable cause to arrest, the arresting officer's subjective intent is irrelevant, and the constitutional issue is measured by whether the force employed was "objectively reasonable in light of the facts and circumstances [the defendant] faced at the time." *Reese*, 527 F.3d at 1272 (internal quotes omitted). The relevant facts and circumstances include "'the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

On motion for summary judgment, the Court must determine "whether the plaintiff's] version of the evidence demonstrates the use of excessive force in violation of the Fourth Amendment." *Reese*, 527 F.3d at 1272. The evidence (including video footage from a television crew coincidentally at the scene), viewed most favorably to the plaintiff, indicates that Barnett was a passenger in an unmarked vehicle driven by Officer Mike Ready. They received a call from Sergeant Walter Conners that he had just observed a pick-up truck (driven by the plaintiff) swerve and pass a car on a curve as it headed west on Topton Road. The officers, who were near the intersection of Topton Road and Highway 43, turned around "to pursue the truck and figure out what was going

[5]

on." The plaintiff was traveling 50-55 miles an hour on a rural two-lane road, typical of travelers on that road, though the officers believed the speed limit (which was not posted) was 30 miles an hour. On a clear straightaway, the officers observed the plaintiff, traveling 55-60 mph, pass in a safe manner a vehicle traveling 35-40 mph.

A mile or so after the officers activated the siren and blue lights mounted in the grill, the plaintiff first checked his rearview mirror and noticed the unmarked vehicle and its blue lights flashing; the plaintiff did not hear the siren until he stopped. After seeing the vehicle, the plaintiff tossed out a cigarette butt. The officers believed the discarded item to be two marijuana joints.

After seeing the blue lights, the plaintiff pulled over to the shoulder at the first intersection. Ready pulled up beside the truck, leaving his vehicle in the road. Ready pulled up almost simultaneously with the plaintiff. Before Ready had stopped his vehicle, Barnett had opened the passenger door, and he exited as Ready suddenly reached full stop. The plaintiff made a more gradual stop, and Barnett was at the plaintiff's open driver window, his extended right hand holding a taser, barely one second after exiting and as the plaintiff was shifting from drive into park. The plaintiff's left hand was on the steering wheel and his right hand was on the gear shift, which was mounted on the steering column. Both hands were in plain sight of Barnett. The plaintiff patently was neither holding a weapon nor reaching for one. Nor did the plaintiff give any sign that he was, or was considering, fleeing the scene.

Barnett immediately thrust his right arm through the open window and discharged the taser. One of the two barbed hooks penetrated the plaintiff's left forearm, and the plaintiff experienced an immediate surge of electricity that caused his arms to go limp and fall.[3] As he fired with his right hand, Barnett opened the driver door with his left hand, briefly fumbling with it. The door did not open prior to Barnett opening it. Upon

---

[3] The basic operation of a taser is described in *Chaney v. City of Orlando*, 483 F.3d 1221, 1223 n.1 (11th Cir. 2007).

opening the door, Barnett flung away the taser, grabbed the still-seated plaintiff and flung him to the ground, without any resistance or even muscular tensing from the plaintiff. The plaintiff was thrown prone on the pavement, with his feet, knees, hips, hands and chest all in contact with the ground and his shoulders a few inches above it. Barnett dropped beside the plaintiff, with his left hand gripping under the plaintiff's left jaw. In one fluid motion, Barnett lifted the plaintiff's head and neck by pulling the left jaw while raising his right arm and bringing his hand down violently on the right side of the plaintiff's now-exposed neck in what is described as a "brachial stun,"[4] which further collapsed the plaintiff. Barnett then pushed the plaintiff's face into the pavement with his right hand, lifted the plaintiff's head with his left hand and slammed it to the pavement with his right a second time, and then repeated a third time. He then handcuffed the plaintiff.

Meanwhile, the plaintiff's vehicle began to roll forward toward a ditch a few yards away, since Barnett had tasered the plaintiff at the moment he had shifted from drive to neutral, before he could shift into park. Ready ran to the truck and stopped it, but not before it knocked over some garbage cans a few feet away.

From the moment Barnett's foot first began emerging from the still-moving unmarked vehicle to the third time Barnett slammed the plaintiff's face into the pavement was less than six seconds. From the appearance of Barnett's foot in the door of his vehicle to the taser strike was approximately two seconds. From the taser strike to flinging the plaintiff to the ground was approximately two seconds, about half of which was consumed by Barnett's fumbling to open the door. From that point to the third head slam was approximately two seconds.

---

[4] "The technique involves the application of an officer's forearm to an area of major muscle mass, such as the side of [the suspect's] neck, in order to induce temporary paralysis." *Mann v. Yarnell*, 497 F.3d 822, 824 n.3 (8th Cir. 2007).

"[G]enerally[,] more force is appropriate for a more serious offense and less force is appropriate for a less serious one …." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002). Barnett identifies the crimes at issue as eluding a law enforcement officer, reckless driving, and simple marijuana possession. All are misdemeanors. Ala. Code § 13A-10-52; *id*. § 13A-12-214; *id*. § 32-5A-190. Barnett makes no argument that these crimes are sufficiently serious to justify his use of force.[5]

Barnett argues that the plaintiff posed an immediate threat to his safety because he could not see the plaintiff's hands, which might have held a weapon. Under the plaintiff's evidence, however, his hands were in plain sight and obviously held no weapon. Nor is there evidence that the plaintiff made any movement suggesting he might be going for a weapon. Barnett also argues he was endangered because the plaintiff could have maneuvered his vehicle to pin him between the truck and the police vehicle. The video shows this could not have occurred, at least not by any sudden movement that Barnett could not easily have avoided. Viewing the evidence in the light most favorable to the plaintiff, a reasonable officer under the circumstances would have realized that he was not in danger. Moreover, whatever theoretical danger might have existed vanished when Barnett tasered the plaintiff and ejected him from the truck. Thus, no possible danger could justify Barnett's brachial stun and head slams.

Barnett argues that he was concerned the plaintiff might try to flee the scene on foot. Perhaps this was a reasonable concern given the plaintiff's failure to pull over for a

---

[5] As for reckless driving, the plaintiff may or may not have been speeding, but Barnett identifies no evidence that his speed exceeded that of most travelers or that he actually endangered anyone. As for eluding a law enforcement officer, the plaintiff did not pull over as soon as the officers activated the siren and blue lights, but the plaintiff denies trying to outrace them. Since the vehicle was unmarked, its blue lights were mounted on the grill rather than on top and so were less noticeable, and it is not clear that the plaintiff would have heard the siren while traveling at 50-55 mph. As for marijuana possession, this is based on marijuana allegedly found in the console after the stop, not on the item the plaintiff tossed out, which was not recovered. Barnett has not suggested he suspected the plaintiff of being under the influence or of transporting contraband.

minute or more after the officers activated the siren and blue lights, but it disappeared once Barnett approached the truck, as occurred almost immediately.[6] At that point, the plaintiff could not exit the truck without either clambering out of his bucket seat to the passenger side – which he made not the slightest move to do – or plowing right through Barnett, which he likewise made no move to do. Use of the taser was, under this version of the facts, wholly unnecessary to prevent the plaintiff's flight. Once Barnett tasered the plaintiff and threw him to the ground, there was even less risk of flight. Barnett argues that the plaintiff struggled on the ground, which could raise questions of both flight and resisting arrest, but the video and the plaintiff's testimony are enough to raise a genuine issue of fact in that regard. Viewing the evidence in the light most favorable to the plaintiff, a reasonable officer under the circumstances would have realized that the plaintiff was not an escape risk.

Barnett asks the Court also to consider the need for applying force, the relationship between the need and the amount of force used, the extent of injury inflicted, and whether the force was applied in good faith or maliciously and sadistically. (Doc. 69 at 12). This is the listing of factors employed in the Eleventh Circuit prior to *Graham*. *E.g., Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986). The final, subjective factor "has been eliminated from the analysis by *Graham* and other cases." *Lee*, 284 F.3d at 1198 n.7. While the first three of these factors do survive *Graham*, *id*., the discussion above effectively incorporates the first two,[7] and they do not favor Barnett. That leaves for consideration the extent of injury inflicted.

---

[6] The video does not support Barnett's position that the plaintiff opened the driver door as if to flee, and the plaintiff has denied having done so.

[7] "*Graham* dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee*, 284 F.3d at 1198.

The plaintiff experienced a small puncture wound on his left forearm from the taser and small facial lacerations to the right side of his face from contact with the pavement. These may be minor injuries, but "objectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm." *Lee*, 284 F.3d at 1200.[8]

The Eleventh Circuit has several times determined that the use of a taser did not constitute excessive force, but none of these cases involved facts like those presented by the plaintiff here. In *Mann v. Taser International, Inc.*, 588 F.3d 1291 (11th Cir. 2009), the plaintiff "refused to comply with [the arresting officers'] requests," her behavior was "violent, aggressive and prolonged," and she "was clearly a danger to herself and others." *Id*. at 1306. In *Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008), the plaintiff "repeatedly ignored police instructions and continue[d] to act belligerently toward police." *Id*. at 2008. In *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), the plaintiff was "hostile, belligerent, and uncooperative." *Id*. at 1278.

The picture painted by the plaintiff here is closer to that present in *Powell v. Haddock*, 369 Fed. Appx. 29 (11th Cir. 2010), where the Court ruled the defendant employed excessive force when he tased the plaintiff twice merely because she objected to him grabbing her arm to push her away from a roadway and questioned his statement that he would "shoot" her if she didn't follow his commands. *Id*. at 30-31. As under the plaintiff's version of facts here, no serious crime was suspected and neither a danger to the officer nor a risk of flight was presented. *See also Brown v. City of Huntsville*, 608

---

[8] In his reply brief, Barnett argues that de minimis injuries establish de minimis force, which does not violate the Fourth Amendment. (Doc. 79 at 6). This argument was not raised in Barnett's principal brief and thus comes too late to be considered. *See Park City Water Authority v. North Fork Apartments, L.P.*, 2009 WL 4898354 at *1 n.2 (S.D. Ala. 2009) (citing cases from over 40 districts applying the rule in 2009 alone). Nor has Barnett cited any appellate decision suggesting that tasing, brachial stunning and head slamming constitute de minimis force if unaccompanied by serious injury. On the contrary, Barnett acknowledges that the use of pepper spray does not constitute de minimis force. (Doc. 79 at 10 (citing *Vinyard*, 311 F.3d at 1348 n.13)).

[10]

F.3d 724, 739 (11th Cir. 2010) (where the plaintiff was not suspected of a serious crime, did not pose a threat to anyone's safety, and was not resisting arrest or attempting to flee but merely trying to comply with the arresting officer's command to exit the vehicle, his using pepper spray inside her vehicle and then throwing her to the pavement constituted excessive force).

Applying the relevant factors to the version of the facts supported by the evidence that is most favorable to the plaintiff, Barnett employed unconstitutionally excessive force.

### C. Clearly Established Law.

To be clearly established, "pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like situated reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A&M University*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The law is clearly established if any of three situations exists.

"First, the words of the pertinent federal statute or constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances to overcome qualified immunity, even in the total absence of case law." *Vinyard*, 311 F.3d at 1350 (emphasis omitted).

"Second, ... some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." *Vinyard*, 311 F.3d at 1351. "For example, if some authoritative judicial decision decides a case by determining that 'X Conduct' is unconstitutional without tying that determination to a particularized set of facts, the decision on 'X Conduct' can be read as having clearly established a constitutional principle: put

[11]

differently, the precise facts surrounding 'X Conduct' are immaterial to the violation." *Id*.

"Third, [when] the Supreme Court or we, or the pertinent state supreme court has said that 'Y Conduct' is unconstitutional in 'Z Circumstances,'" then if "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar [to those involved in the opinion], the precedent can clearly establish the applicable law." *Vinyard*, 311 F.3d at 1351-52. When case law is utilized to show that the law was clearly established, it must pre-date the challenged conduct. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

The plaintiff cites ten Eleventh Circuit cases to show that Barnett's conduct violated clearly established law, but none meets his burden.[9] *Brown*, *Reese*, and *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008), all were decided after March 14, 2008. *Hadley*, *Vinyard*, *Lee* and *Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000), all involved suspects who were not merely compliant but also restrained by handcuffs when the force was inflicted.[10] *Reese*, *Mercado* and *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998), all involved the use of force when no arguable probable cause existed, which meant that any use of force was unlawful.[11] *Reese*, *Mercado*, *Priester v. City of Riviera Beach*, 208 F.3d

---

[9] He also cites several district court opinions, but they are legally irrelevant to the analysis. *Mercado*, 407 F.3d at 1159.

[10] The plaintiff relies principally on *Vinyard*. (Doc. 74 at 15-16). In *Vinyard*, the plaintiff was not only handcuffed behind her back but secured in the back seat of the police vehicle, where she was separated from the defendant by a glass or plastic partition, and the defendant stopped the vehicle to use pepper spray on the plaintiff merely because she was yelling at him from the back seat (in response to the defendant's slurs). 311 F.3d at 1343-44, 1348-49. The facts of *Vinyard* do not remotely support the plaintiff's position.

[11] "Even de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect ...." *Zivojinovich*, 525 F.3d at 1071.

[12]

919 (11th Cir. 2000), and *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997), all involved extreme applications of force far divorced from those present here.[12]

The plaintiff quotes *Hadley* for the proposition that "[o]ur cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." 526 F.3d at 1330. The Court cited only *Lee* and *Slicker* for this proposition and, as noted above, in both cases (and in *Hadley*) the suspect was handcuffed when force was applied. To the doubtful extent that *Hadley* could be read as automatically invalidating any use of force against a suspect who, though not yet handcuffed, is not actively resisting, it postdates the incident at issue and thus was not binding on Barnett.

In sum, it was not clearly established on March 14, 2008 that the force Barnett employed, under the circumstances he encountered, violated the Fourth Amendment. He is therefore entitled to qualified immunity.

**D. Effect of Rulings.**

The amended complaint seeks from Barnett both damages and a declaration that he violated the plaintiff's right to be free from excessive force. (Doc. 28 at 14-15). Because Barnett is shielded by qualified immunity, he cannot be held liable for damages. However, "[b]ecause qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory

---

[12] *See Reese*, 527 F.3d at 1273 (four defendants piled on top of the plaintiff and kicked him, beat him, twisted his arm behind his back (causing serious injury), applied a pressure point technique on his neck, and sprayed him with pepper spray); *Mercado*, 407 F.3d at 1154-55 (from a distance of six feet, the defendant launched a polyurethane baton into the plaintiff's head with an energy comparable to that of a professionally thrown baseball, causing a fractured skull and brain damage); *Priester*, 208 F.3d at 923-24 (the defendant allowed his canine to attack the plaintiff for two minutes); *Smith*, 127 F.3d at 1420 (the defendant pulled and struck the plaintiff's arm, breaking it).

or injunctive relief." *Ratliff v. DeKalb County*, 62 F.3d 338, 340 n.4 (11th Cir. 1995); *accord Swint v. City of Wadley*, 51 F.3d 988, 1001 (11th Cir. 1995); *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995). The plaintiff's Fourth Amendment claim thus survives to the extent it seeks declaratory relief.

## II. Assault and Battery.

Barnett invokes peace officer immunity under Alabama law. (Doc. 69 at 18). "Every peace officer ... whose duties include the enforcement of ... the criminal laws of this state ... shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338(a). "However, whether a qualified police officer is due § 6-5-338(a) immunity is now judged by the restatement of State-agent immunity articulated by *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000)." *Blackwood v. City of Hanceville*, 936 So. 2d 495, 504 (Ala. 2006) (internal quotes omitted).

*Cranman* extends immunity to a defendant's conduct in "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to law-enforcement officers' arresting or attempting to arrest persons." *Blackwood*, 936 So. 2d at 504 (internal quotes omitted). The plaintiff does not question the proposition that Barnett's conduct falls within this portion of *Cranman*. (Doc. 74 at 17).

Even if conduct falls within a category identified in *Cranman*, the defendant is not immune if he "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Blackwood*, 936 So. 2d at 503-04 (internal quotes omitted). Barnett does not address these exceptions, contenting himself with the statement that, given his own version of what occurred, he acted reasonably. (Doc. 69 at 19). On motion for summary judgment, however, it is not Barnett's version of the evidence that matters, but the plaintiff's. Under that version, Barnett was perfectly aware that the plaintiff was harmless and passive and unsuspected

[14]

of any serious crime, yet instead of simply ordering the plaintiff to exit the vehicle and present his hands for cuffing, he electrically shocked him, flung him to the pavement, chopped his neck, and slammed his head into the pavement multiple times. Perhaps (though it is doubtful) an argument could be constructed that even such egregious conduct is insufficient to create a jury issue as to willfulness, malice or bad faith, but Barnett offers none.

## CONCLUSION

For the reasons set forth above, Barnett's motion for summary judgment is **granted** with respect to the plaintiff's claim for damages for violating the plaintiff's rights under the Fourth Amendment. In all other respects, the motion is **denied**.

DONE and ORDERED this 22nd day of December, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE